UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN C. WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>QUALITY LOAN SERVICES CORP., et al.,<br><br>　　　　Defendants. | Case No.  14-cv-02228-JCS<br><br>**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915 WITH LEAVE TO AMEND** |

## I.     INTRODUCTION

Plaintiff Stephan Williams filed this pro se action against Quality Loan Services Corp. ("QLS"), Chase Bank/JP Morgan ("Chase") and Fannie Mae asserting claims in connection with the foreclosure on his home.  Having previously granted Plaintiff's Application to Proceed in Forma Pauperis, the Court now considers whether Plaintiff's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  *See Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  Plaintiff has consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Court dismisses Plaintiff's complaint with leave to amend.

## II.     THE COMPLAINT

Plaintiff Stephan Williams alleges that on April 12, 2005, a deed of trust ("DOT") was recorded in the Contra Costa County Recorder's Office against Plaintiff's residence, located at 68 Mozden Lane, Pleasant Hill, California ("the Property"), to secure a loan in the amount of

$280,000 in favor of Washington Mutual Bank, N.A. ("WaMu"). Complaint, ¶ 11.[1] WaMu was the Lender on the DOT and California Reconveyance Company ("CRC") was listed as Trustee. *Id*. According to Plaintiff, on July 13, 2005, after the DOT was recorded, WaMu securitized and sold the beneficial interest in the DOT to the Washington Mutual Mortgage Pass-Through Certificates Series 2005-ARS Trust ("Trust"). *Id*., ¶¶ 12, 29. WaMu allegedly retained only the right to service the note and mortgage. *Id*., ¶ 35.

According to Plaintiff, the Pooling and Servicing Agreement ("PSA") for the Trust established a closing date of March 30, 2006 for recording assignments to the Trust. *Id*., ¶¶ 30-31. Plaintiff alleges that the terms of the PSA further required that all promissory notes transferred to the Trust must have a complete chain of endorsements before the closing dated and "under no circumstances later than 90 days after the Trust's closing date." *Id*., ¶ 17. Instead, Plaintiff alleges, the assignment of the DOT was not recorded until June 22, 2009, apparently after Plaintiff refinanced his home and Chase became the mortgagor. *Id*., ¶¶ 1, 30. Plaintiff alleges that the assignment was invalid because it was not timely recorded and therefore, that the transfer was invalid, the DOT did not become an asset of the Trust, and the Trust did not obtain the power of sale on the Property. *Id*., ¶¶ 29-32.

In the meantime, in 2008, WaMu ceased conducting business and entered into a receivership. *Id*., ¶ 20. The Federal Deposit Insurance Corporation ("FDIC") acted as receiver. *Id*. According to Plaintiff, on September 25, 2008, Chase entered into a Purchase and Assumption Agreement "to acquire certain of WaMu's assets." *Id*., ¶¶ 20, 35.

Plaintiff alleges that on April 2, 2012 a Notice of Default ("NOD") was recorded on behalf of Chase. *Id*., ¶¶ 32, 36.[2] Plaintiff contends the NOD was "false because CRC was not authorized before a beneficial interest holder of Plaintiff's Deed of Trust due to the unrecorded sale and securitization [on] July 13, 2005. *Id*., ¶ 36. Plaintiff alleges that the NOD was also false and invalid because it "was signed by Kerime Asias as Assistant Secretary of CRC as Trustee; however, Ms. Arias is not, in fact, an Assistant Secretary of CRC, but instead Ms. Arias is an

---

[1] The DOT is not attached to the Complaint.
[2] The NOD also is not attached to the Complaint.

employee of [Chase Bank/JP Morgan, N.A.] and has signed the document on its behalf." *Id*., ¶ 36. Therefore, Plaintiff alleges, Ms. Arias had no authority to sign for the CRC. *Id*. Finally, Plaintiff alleges that the NOD falsely stated that the requirements of Cal. Civil Code § 2923.5 had been met. *Id*., ¶ 37. In particular, Plaintiff alleges that Chase had not contacted him, either in person or by telephone, at least 30 days prior to recording the NOD, as required. *Id*. Plaintiff also alleges that the NOD did not include an attestation by a person with personal knowledge "that someone tried with due diligence to contact the borrower as required by Section 2923.5, and Plaintiff was never contacted." *Id*.

Plaintiff alleges that in December 2012, "Defendants made an offer to Plaintiff to avoid a foreclosure sale by participating in a short sale of Plaintiff's property." *Id*., ¶ 69. In addition, Plaintiff attaches to the complaint a letter dated December 4, 2012 that states, in part, as follows:

> You are at risk of losing your home and we understand this may be the hardest decision you've ever made. But it might be time to sell your home in order to stop the collection calls, avoid foreclosure, find financial peace of mind and make a fresh start.
>
> Here's how it works:
>
> FIRST –Call us today at 800-848-9380 to get started.
>
> Since you are in the active foreclosure process, now is the time to contact us to discuss how to sell your home for less than you owe, so you can avoid foreclosure. To take advantage of this offer, list your home for sale by December 24, 2012.
>
> SECOND – Sell your home and receive $20,000
>
> Once we agree on a sale price and a few other terms, you can sell your home for that amount, avoid foreclosure and get money back. . . . .
>
> FINALLY – Walk away owing nothing more on your mortgage. . . . .
>
> Your listing agreement must be received by December 24, 2012 so call . . . today to discuss listing your home for sale.

Complaint, Ex. B (hereinafter, "Short Sale Letter"). Plaintiff alleges that he relied on the "short sale promise" and retained a broker to seek a qualified buyer to purchase his home. *Id*., ¶ 70. According to Plaintiff, the broker found a qualified buyer and an offer was conveyed to Chase in May 2013. *Id*. Chase "refused to cooperate as promised," Plaintiff alleges. *Id*. The complaint

3

1   states that a letter from the broker evidencing Defendant's refusal to cooperate is attached.  *Id*., ¶
2   72.  No such document was attached to the Complaint, however.

3   Plaintiff also alleges that sometime in 2013 he received a letter from Chase stating
4   "categorically that 'nothing more is owed on this account.'"  *Id*., ¶ 16.  Plaintiff attaches to the
5   Complaint a document carrying the Chase logo entitled "Frequently Asked Questions," which
6   answers the question "[w]hy are you cancelling the amount owed to Chase" as follows:  "Chase
7   and four other mortgage servicers have agreed to a mortgage servicing settlement with the states
8   and Federal government.  As part of the settlement, we are waiving the mortgage balance."
9   Complaint, Ex. A.  The next question is, "What are the benefits of cancelling the amount owed?"
10  *Id*.  The answer is, "Nothing more is owed on the account."  *Id*.

11  A Notice of Trustees' Sale ("NOTS") was recorded on December 15, 2013.  *Id*., ¶¶ 36-37.
12  Plaintiff alleges that the NOTS, like the NOD, was false and invalid due to "Defendants' failure to
13  comply with the Notice and Contact requirements" of Cal. Civ. Code § 2923.5."  *Id*.  Plaintiff
14  alleges that Chase acted with malice in recording the NOD and NOTS because it did not have the
15  power of sale as trustee and it knew its actions would cause pecuniary and other damages.  *Id*., ¶¶
16  40-41.  According to Plaintiff, the false recordation of these documents also "impair[ed] the
17  vendibility of Plaintiff's property on the open market and caused a diminution of value to the
18  Subject Property."  *Id*., ¶ 43.

19  Plaintiff alleges that the foreclosure sale of Plaintiff's home was conducted on January 14,
20  2014.  *Id*., ¶ 21.  According to Plaintiff, on the same day, an assignment of DOT was recorded in
21  the Contra Costa County's Recorder's Office.  *Id*., ¶ 22.  Plaintiff alleges that the assignment
22  "purports to convey the beneficial interest in the [DOT] to Fannie Mae."  *Id*.

23  Plaintiff asserts the following claims in his complaint:  1) Slander of Title; 2) Wrongful
24  Foreclosure; 3) Fraud; 4) Exoneration of Mortgage Debt; 5) Unfair Business Practices under Cal.
25  Civ. Code § 2923 and Cal. Bus. & Prof. Code §§ 17200 *et seq.*; 6) Promissory estoppel; 7)
26  Declaratory relief; and 8) Injunctive Relief.   Although Plaintiff refers generally to "Defendants"
27  in his claims, the specific facts alleged in support of each of his claims relate only to Defendant
28

4

1  Chase.[3]  He asks the Court to declare the January 14, 2014 foreclosure sale void so that he can
2  engage in and complete the short sale he alleges was promised by Chase. Complaint at 20.
3  Alternatively, he asks to Court to award the $20,000 promised in the Short Sale Letter. *Id*.  He
4  also asks for a Temporary Restraining Order and Preliminary Injunction preventing eviction from
5  his home.  *Id*.  Finally, he seeks an award of compensatory damages.  *Id*.

**III.  ANALYSIS**

    **A.  Legal Standard**

If a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is permitted to proceed in forma pauperis, the court must undergo a preliminary screening of the complaint and dismiss any claims which: (1) are frivolous and malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  To state a claim for relief, Plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When reviewing the sufficiency of the Complaint, the Court takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990). The "tenet that a court must accept a complaint's allegations as true," however, "is inapplicable to . . . mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).  Complaints filed by *pro se* litigants must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

    **B.  Slander of Title**

Slander of title "occurs when a person, without privilege to do so, publishes a false

---

[3] Because Plaintiff has not identified the specific conduct by Defendants QLS and Freddie Mae upon which his claims are based, the Court concludes that Plaintiff has stated no viable claims as to these Defendants.  Plaintiff shall be permitted to amend his complaint to add factual allegations relating to each specific defendant and identify the basis of each claim as to each defendant.  For the purposes of this review, the Court addresses Plaintiff's claims only as they relate to Chase.

1  statement that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v.*
2  *Bennett*, 53 Cal. App. 4th 75, 85 (1997). The required elements of a claim for slander of title are
3  "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss."
4  *Sumner Hill Homeowners' Ass'n Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030
5  (2012). Plaintiff has adequately pled the first three requirements but he has not alleged sufficient
6  facts to show a direct pecuniary loss.

7  By alleging that the assignments of the DOT, as well as the NOD and NOTS, were
8  recorded, Plaintiff has adequately alleged publication. *See Nguyen v. JP Morgan Chase Bank,*
9  *N.A.,* No. 12-cv-4183 PSG, 2012 WL 4942816, at *3 (N.D. Cal. Oct. 17, 2012) (publication
10  adequately pled based on allegation that assignment of DOT was recorded).

11  Plaintiff has also pled falsity by alleging that the NOD was signed by an individual who
12  was not who she represented herself to be and did not have authority to sign on behalf of CRC.
13  *See Ogilvie v. Select Portfolio Servicing*, No. 12-cv-1654 DMR, 2012 WL 3010986, at *3 (N.D.
14  Cal., July 23, 2012) (finding that falsity element of slander of title claim was sufficiently alleged
15  where plaintiff alleged that recorded documents were "signed by individuals who [were] not who
16  they represent[ed] themselves to be").

17  In addition, Plaintiff alleges that the 2009 and 2014 assignments of the DOT, the NOD and
18  the NOTS, are false because Defendants caused them to be executed without having any beneficial
19  interest in the DOT (as discussed further below, with reference to Plaintiff's wrongful foreclosure
20  claim). Such allegations can be sufficient to plead falsity. *Bergman v. Bank of America*, No. 13-
21  CV-0074 JCS, 2013 WL 5863057, at * 18 (N.D. Cal. Oct. 23, 2013) ("*Bergman I*") (finding that
22  for purposes of motion to dismiss, allegations that defendant bank caused NOD to be executed
23  without having beneficial interest in the DOT was sufficient to plead falsity).[4]

---

[4] The Court does not, however, rely on Plaintiff's allegations relating to flaws in securitization that violated the PSA, such as Chase's failure to record the assignment until after the closing date of the Trust specified in the PSA. Like many courts, the undersigned has concluded that a borrower generally does not have standing to challenge the securitization process itself. *Reyes-Aguilar v. Bank of America*, No. 13-cv-05764 JCS, 2014 WL 2153792, at *4 (N.D. Cal., March 20, 2014). Thus, in *Reyes-Aguilar*, the court held that the plaintiffs did not have standing to challenge foreclosure on their property based on the defendant's alleged failure to record the assignment of the DOT within the deadline set in the pooling and service agreement for the trust to which the

Similarly, Plaintiff has adequately alleged that Chase acted with malice and therefore without privilege. A "privileged" publication is one made "[i]n a communication, without malice, to a person interested therein [ ] by one who is also interested." Cal. Civ.Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ.Code § 2924(d); *see also Ogilvie v. Select Portfolio Serv'g*, No. 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012) (collecting cases). Malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976). "[T]he mere 'formulation of false documents' is inadequate to plead malice." *Ogilvie*, 2012 WL 3010986, at *3. Nonetheless, at the pleading stage, this Court has held that it may be sufficient to allege that the bank acted recklessly by transferring its interest in a DOT to another entity and then initiating foreclosure as if it retained an interest in the property. *Bergman I*, 2013 WL 5863057, at * 18 (citing *Barrionuevo v. Chase Bank*, N.A.885 F. Supp. 2d 964, 975 (N.D. Cal. 2012) ("*Barrionuevo I*")).

Plaintiff has not, however, alleged facts that are sufficient to establish direct pecuniary loss. "Direct pecuniary loss" is restricted to:

> (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

*Ryan v. Editions Ltd. W., Inc.*, No. C–06–4812–PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27, 2007) (quoting *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984); Rest. 3d Torts § 633). Plaintiff has alleged that the false recordation of the documents discussed above "impair[ed] the vendability of Plaintiff's property on the open market and caused a diminution of value to the Subject Property." Complaint ¶ 43. This bare allegation is not sufficient to plead pecuniary loss,

---

beneficial interest had purportedly been assigned.

however, because Plaintiff has not alleged (and cannot allege) that he suffered harm from the inability to sell a property he does not own. *Bergman I*, 2013 WL 5863057, at \*19 (citing *Ogilvie*, 2012 WL 3010986, at \*4 (dismissing similar slander of title claim due, in part, to failure to properly allege pecuniary harm based on impaired vendibility)). Therefore, Plaintiff's complaint fails to state a claim for slander of title.

### C. Wrongful Foreclosure

In California, a claim for wrongful foreclosure has the following elements: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.,* 202 Cal. App. 4th 89, 104 (2011). For the reasons stated below, the Court concludes that Plaintiff has adequately alleged an illegal sale. The Court further finds that the tender rule does not apply under the facts alleged here. The Court nonetheless finds that Plaintiff has not alleged sufficient facts to show that he was prejudiced by Defendants' conduct.

"Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure." *Barrionuevo I*, 885 F.Supp. 2d at 973-974 (collecting cases). The facts in *Barrionuevo I* are directly on point. There, the plaintiffs alleged that in 2006, after they entered into a deed of trust, WaMu securitized and sold the beneficial interest in the deed of trust to a Series 2006-AR4 Trust. *Id*. at 971-972. Consequently, they alleged, when Chase acquired some of WaMu's assets, in 2008, it did not acquire the beneficial interest in the plaintiffs' deed of trust because it had already sold the beneficial interest in 2006 and had nothing to convey. *Id*. The court found that these allegations were sufficient, at the pleading stage, to plead an illegal sale of property. *Id*. at 974. A number of other district courts have reached the same conclusion. *See Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 WL 2173786, at \*5-\*6 (C.D. Cal. June 2, 2011) (holding that plaintiff stated a claim for wrongful

8

1  foreclosure based on allegations that the mortgage was sold by Washington Mutual to a specific
2  security, and therefore that Chase did not obtain mortgage when it Washington Mutual's assets);
3  *Ohlendorf v. Am. Home Mortg. Serv'g*, 279 F.R.D. 575, 583 (E.D.Cal. 2010) (holding that plaintiff
4  stated a claim for wrongful foreclosure based on allegation that the party that initiated the order
5  was not the beneficiary under the deed of trust at the time the notice of default was initiated). In
6  *Bergman I*, the undersigned also concluded that the plaintiffs had "identified a specific factual
7  basis for alleging that the foreclosure was not initiated by the correct party," which may form the
8  basis for a wrongful foreclosure claim. 2013 WL 5863057, at *23 (citing *Gomes v. Countrywide
9  Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 (2011)). In that case, the plaintiffs alleged that
10 the defendant had previously transferred the DOT to Freddie Mac and therefore the defendant did
11 not have the authority to foreclose on the property. *Id.*, at *18, 23. Based on this authority, the
12 Court finds that Plaintiff has adequately pled the first element of a wrongful foreclosure claim.[5]

13       The Court also finds that, to the extent Plaintiff has alleged that Chase did not have an
14 interest in the Property and could not initiate foreclosure, Plaintiff may not be required to make an
15 offer of tender. As the undersigned noted in *Bergman I*, "[s]everal courts have refused to apply
16 the tender requirement where plaintiff alleges that the defendant lacks authority to foreclose on the
17 property and, thus, that any foreclosure sale would be void rather than merely voidable." *Id.*, at *
18 22 (citing *Lester v. J.P. Morgan Chase Bank,* No. 12-cv-5491 LB, 2013 WL 633333, at *10;
19 *Barrionuevo I*, 885 F.Supp.2d at 970-71; *Albano v. Cal-Western Reconveyance Corp.*, No. 12-cv-
20 4018 KAW, 2012 WL 5389922, at *7-*; *Natividad v. Wells Fargo Bank, N.A.*, No. 12-cv-3646
21 JSC, 2013 WL 2299601, at *16-*17 (N.D. Cal., May 24, 2013); *Dimock v. Emerald Props. LLC*,
22 81 Cal. App. 4th 868, 878 (2000)). The Court explained this distinction as follows:

> The rationale for this distinction between void and voidable deeds is the equitable policy supporting the tender rule. That is, tender is required based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his

---

[5] Plaintiff also asserts his wrongful foreclosure claim on the basis of the alleged violation of Cal. Civ. Code Section 2923.5, which requires that the mortgage servicer contact the borrower to discuss alternatives to foreclosure prior to recording the NOD. For the reasons discussed below, in connection with Plaintiff's UCL claim, the Court finds that Plaintiff fails to state a claim based on this provision.

United States District Court
Northern District of California

> obligations under the contract so that equity will not have been employed for an idle purpose. . . . However, where a sale is void at the outset, rather than voidable, the transaction is a nullity with no force or effect as opposed to one which may be set aside in equity.

*Id*. (quotations and citations omitted). Because Plaintiff has alleged some facts that, if true, may establish that the foreclosure sale was void, rather than merely voidable, Plaintiff is not required at this early stage of the case to offer tender.

Plaintiff's wrongful foreclosure claim fails to state a claim, however, because Plaintiff has not alleged facts showing prejudice. Where, as here, the foreclosure sale has already occurred, "there is no longer a 'threat' of foreclosure" and, without any allegations that the foreclosure sale would not have occurred, a plaintiff fails to properly allege prejudice. *See Bergman I*, 2013 WL 5863057, at *21 (quoting *Albano*, 2012 WL 5389922, at *7). One California court explained the reasoning supporting this rule as follows:

> Prejudice is not presumed from 'mere irregularities' in the process . . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to [another lender] interfered in any manner with her payment of the note . . . nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1507-1508 (2012) (citations omitted). Here, Plaintiff has not alleged any facts supporting a reasonable inference that the foreclosure sale would not have occurred if the loan had been properly transferred to Defendants. In particular, he does not allege that the transfer interfered with his payment of the note or that the actual owner of the beneficial interest in the property would not have foreclosed. Therefore, Plaintiff has not stated a claim for wrongful foreclosure.

### D. Fraud

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable

10

reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal.App.4th 289, 294-295 (2005) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).  When alleging fraud in federal court, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Plaintiff's fraud claim is based on the theories that the assignment of the Property to Fannie Mae was fraudulent because: 1) Chase was not authorized to foreclose on his property because it did not own a beneficial interest in it; and 2) the foreclosure documents were signed by a "known robo-signer who lacked the requisite corporate and legal authority to execute a valid assignment." Complaint, ¶ 55.  Plaintiff has adequately alleged a false representation under each of these theories, and that Defendants acted with knowledge.  Plaintiff has not, however, alleged any specific facts showing that the misrepresentations relating to ownership of the beneficial interest in the Property induced justifiable reliance or resulted in specific damages to Plaintiff.  Similarly, there are no specific allegations that the use of a robo-signer to sign the foreclosure documents induced Plaintiff's reliance or resulted in damages to Plaintiff.   Therefore, Plaintiff fails to state a claim for fraud.

### E.     Exoneration of Mortgage Debt

Plaintiff asserts a claim entitled "Mortgage Debt Exonerated."   It appears to be based on a communication Plaintiff received from Chase informing him that he no longer owed anything on the loan under the terms of a national settlement.  Complaint, ¶ 60.  The Court construes this claim as a wrongful foreclosure claim, based on the theory that Defendants' foreclosure and sale of his home was wrongful because the debt had been excused.  This claim fails because Plaintiff has not alleged enough facts to support a reasonable inference that the debt was excused.  Although he has attached a communication from Chase, Plaintiff has only provided the "Frequently Asked Questions" ("FAQs") page of the communication.  He has not alleged any facts specifically identifying the debt that was allegedly excused; nor does the FAQs page attached to the Complaint provide any details.  While Plaintiff is not required to plead a wrongful foreclosure claim with specificity, he must include enough factual allegations to render the claim plausible.  He has not

11

done so. Thus, as currently pled, Plaintiff has not stated a wrongful foreclosure claim based on the alleged exoneration of his debt.

### F. Unfair Business Practices (Cal. Civ. Code § 2923 and Cal. Bus. & Prof. Code §17200)

California's Unfair Competition Law ("UCL") prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code §§ 17200 *et seq*. To establish a violation of Section 17200, a plaintiff may establish a violation under any one of three prongs. To state a cause of action under the first prong, based on an "unlawful" business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law. *People v. McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).

Plaintiff's UCL claim is based on the alleged violation of California Civil Code Section 2923.5. Section 2923.5 provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until . . . 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e)." Paragraph 2, in turn, provides as follows:

> A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

Cal. Civ. Code § 2923.5(a)(2). Subdivision (e) sets forth requirements for "due diligence," which include the requirement that a mortgage servicer first send the borrower a letter by first-class mail with the HUD (800) telephone number and that the mortgage servicer make at least three attempts, at different hours and on different days, to reach the borrower by telephone. Cal. Civ. Code § 2923.5(e). Plaintiff alleges that Defendants did not exercise due diligence and in particular, that

Defendants did not attempt to contact him by telephone at least three times and did not contact him to assess his financial situation and explore options to avoid foreclosure. Complaint ¶ 65. Nor did they inform him that he had a right to schedule a subsequent meeting within 14 days, he alleges. *Id.* ¶ 66.

While Plaintiff alleges facts which might establish a violation of Section 2923.5, his claim fails because until California's Home Owner's Bill of Rights ("HBOR") went into effect, on January 1, 2013, the only remedy available for violation of this provision was postponement of the foreclosure sale where the sale had not already occurred. *See Rockridge I*, 985 F. Supp. 2d at 1153) (citing *Mabry v. Superior Court*, 185 Cal.App.4th 208, 235 (2010)). In *Mabry*, "the court extensively reviewed section 2923.5 and persuasively reasoned that the remedy for a violation is postponement of a foreclosure sale." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877 (N.D. Cal., 2010) (citing *Mabry*, 185 Cal.App.4th at 235)). The *Mabry* court stated, "[t]here is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale." 185 Cal. App. 4th at 235.

In *Rockridge I*, the undersigned explained that the HBOR gives borrowers the right to seek not only injunctive relief *before* the foreclosure sale but also economic damages for violations of certain provisions *after* the trustees' sale has occurred. 985 F. Supp. 2d at 1148-1149 (citing Cal. Civ. Code § 2924.12). The Court further found, however, that the remedies created in the HBOR do not apply retroactively to documents that were recorded before it took effect, on January 1, 2013. *Id.* at 1152. Because the NOD in this case was recorded on April 2, 2012, the economic damages remedy that was created in the HBOR is not available to Plaintiff. Nor is injunctive relief available because the only form of injunctive relief that existed prior to the enactment of the HBOR was postponement of the trustees' sale. Because Plaintiff's UCL claim is based on the alleged violation of Section 2923.5, Plaintiff fails to state a claim under the UCL.

### G.   Promissory estoppel

The elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance

must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011). Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890 (1976) (citing *Youngman v. Nev. Irrigation Dist.*, 70 Cal.2d 240, 249 (1969)).  Plaintiff's promissory estoppel claim is based on the December 4, 2012 letter he received from Chase, attached as Exhibit B to his complaint, which offered to pay him $20,000 if he sold his home in a short sale.   The Court finds that Plaintiff's allegations are sufficient to state a claim for promissory estoppel, at least for the purposes of surviving review under § 1915.

The doctrine of promissory estoppel may be invoked even on the basis of a conditional promise.  *Aceves*, 192 Cal. App. 4th at 226 (citing *Garcia v. World Savings, FSB*, 183 Cal.  App. 4th 1031, 1044 (2010)).  The court in *Aceves* explained:

> "To be enforceable, a promise need only be '"definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."' . . . It is only where '"a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, [that] there is no contract."'

*Id*. (quoting *Garcia*, 183 Cal. App. 4th at 1044).  Thus, in *Aceves*, the court found that a promise was "clear and unambiguous" where the plaintiff alleged that "in reliance on a promise by U.S. Bank to work with her in reinstating and modifying the loan, Aceves did not attempt to save her home under chapter 13."  *Id*. at 225.  The plaintiff went on to allege that "U.S. Bank then went forward with the foreclosure and did not commence negotiations toward a possible loan solution." *Id*.  In concluding that the promise to "work with" plaintiff was sufficient to support a claim for promissory estoppel, the court distinguished the facts of *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).  *Id*. at 226.  In that case, the court explained, the plaintiff alleged that the bank had promised to actually modify the loan, rather than to enter into negotiations as in *Aceves*.  *Id*.

14

Here, the promise alleged is conditional to the extent that it makes clear that Chase retained the discretion to reject a short sale offer based on the purchase price and "a few other terms." Complaint, Ex. B. These conditions do not preclude Plaintiff's claim for promissory estoppel, however. As noted above, a conditional promise can support a claim for promissory estoppel. As in *Aceves*, Plaintiff alleges not only that Chase should have permitted the short sale and paid him the $20,000 promised in the letter (a promise that may or may not support a claim for promissory estoppel), but also that Chase promised to cooperate in facilitating a short sale but failed to do so. Complaint ¶ 71. Under similar facts, Judge Lloyd found that a letter offering a borrower the opportunity to participate in a short sale program was sufficiently definite to support a breach of contract claim. *Brooksbank v. Private Capital Group, LLC,* No. 13-cv-2667 HRL, 2014 WL 1493939, at *2 (N.D. Cal., April 16, 2014). In that case, the court acknowledged that whether the terms of the contract were sufficiently definite was a question that would ultimately turn on the surrounding factual circumstances but declined to resolve that issue at the pleading stage. The undersigned agrees that the Short Sale Letter makes a sufficiently definite promise to support a claim for promissory estoppel.

Plaintiff also alleges that he retained a broker and found a qualified buyer for his property in May 2013, well before the foreclosure sale was conducted. These allegations are sufficient to support an inference that he acted in reliance on the promise in the letter that Chase would cooperate in facilitating a short sale of his home. Plaintiff's allegations also are sufficient to show that his reliance was detrimental. Construing the complaint liberally, Plaintiff's allegations support an inference that he devoted time and energy to retaining a broker to arrange for a short sale and further, that had Chase cooperated in facilitating the short sale, as promised, the foreclosure sale might have been avoided and Plaintiff would have been paid the $20,000 promised by Chase in the Short Sale Letter. Therefore, the Court finds that Plaintiff has satisfied the requirements of § 1915 as to his claim for promissory estoppel.

**IV.   CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff's claim for promissory estoppel against Chase is sufficient to survive review under 28 U.S.C. § 1915 but that his remaining claims

15

are deficient. Therefore, the Court dismisses Plaintiff's complaint with leave to amend to address the deficiencies identified in this Order. In addition to alleging additional facts to support his claims and identifying the basis for his claims as to each named defendant, Plaintiff may assert additional legal claims so long as they are reasonably related to the claims in his original complaint and he can plead some specific facts that render those claims plausible for the purposes of stating a claim. **Plaintiff's amended complaint shall be filed within forty-five (45) days of the date of this order.**

Plaintiff may wish to seek free limited legal assistance from the **Legal Help Center** by calling the appointment line at (415) 782-8982 or signing up for an appointment in the appointment book located outside the door of the Help Center, located at the San Francisco courthouse at 450 Golden Gate Avenue on the 15th Floor, Room 2796. Appointments are held Monday through Friday at various times throughout the day. Plaintiff can speak with an attorney who will provide basic legal help, but not legal representation.

**IT IS SO ORDERED.**

Dated: October 17, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge